IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-3712

**ABEDA KEBEDE**

    Plaintiff,

v.

**EASTERN STAR MASONIC RETIREMENT CAMPUS**

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

**COMES NOW**, Plaintiff, Abeda Kebede, by and through her counsel, Baumgartner Law, LLC, and respectfully submits this Complaint and Jury Demand against the above-named Defendant, Eastern Star Masonic Retirement Campus, and alleges and avers as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Colo.Rev.Stat. § 34-24-401 *et. seq.* ("CADA").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(4), 1367, 42 U.S.C. § 2000e-5, and the aforementioned statutory provisions.

3. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in Colorado, because Defendant has transacted business in Colorado,

and because Defendant's illegal employment practices were committed in the State of Colorado.

4. Venue is proper in the United States District Court for the District of Colorado under 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are kept in Colorado, decisions adverse to Plaintiff's employment were made in Colorado, because Plaintiff worked in Colorado at the time of Defendant's unlawful employment practices, and because Plaintiff would have worked in Colorado if not for Defendant's unlawful employment practices.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has timely invoked and fully exhausted all administrative remedies applicable to this action. Plaintiff timely filed a Charge with the EEOC alleging discrimination on the basis of race, national origin as well as retaliation in violation of Title VII.

6. The Charge was filed within 300 days of the occurrence of one or more of the alleged unlawful employment practices in violation of 42 U.S.C. § 2000, *et seq*. Plaintiff filed her Charge on June 11, 2019.

7. The EEOC issued a Notice of Right to Sue on September 30, 2020. Plaintiff is filing the current Complaint and Jury Demand within 90 days of receiving the Notice of Right to Sue.

## PARTIES

8. Plaintiff is an Ethiopian national. Plaintiff currently resides in the State of Colorado. At the time of the incidents that gave rise to this action, Plaintiff was a resident of the State of Colorado.

9. Defendant, Eastern Star Masonic Retirement Campus, (hereafter referred to as "Defendant") is a non-profit corporation licensed to transact business in the State of Colorado. Defendant's principal office address is 2445 South Quebec Street, Denver, Colorado 80231. Defendant is an employer subject to the provisions of Title VII and CADA.

## GENERAL ALLEGATIONS

10. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 7 of this Complaint and Jury Demand.

11. Plaintiff was discriminated against on the basis of race and national origin, and Plaintiff suffered wrongful and unlawful termination of her employment as follows:

12. Plaintiff began her employment with Defendant in August of 2006 as a housekeeper in Defendant's retirement community. In January 2007, Plaintiff was promoted to be a Qualified Medication Administration Personnel (QMAP)/Housekeeper. In 2014, Plaintiff was again promoted to the position of Resident Assistant. During the time when Plaintiff enjoyed equal employment opportunities, Plaintiff was under different supervision that she

3

was at the time of her wrongful termination.

13. Since the date she was hired, Plaintiff has at all times relevant been a full-time employee of Defendant. Plaintiff was a hard-working, dependable, valued member of Defendant's staff for many years.

14. Plaintiff began to experience unfair and discriminatory treatment when Defendant hired a new Director of Nursing named Marta Valdez. At all relevant times, Ms. Valdez was Plaintiff's direct supervisor.

15. On January 10, 2019, Plaintiff was terminated by Ms. Valdez for allegedly failing to report to work for two consecutive days without notifying her supervisor (Ms. Valdez).

16. Prior to her termination, Plaintiff had worked for at least an entire year consecutively with no time off.

17. On December 28, 2018, Plaintiff requested two days off (January 7 and 8, 2019) from Defendant.

18. Plaintiff contacted Defendant to confirm that her request for time off had been approved, and she received confirmation from co-workers that the days off had been approved.

19. Based on information and belief, Ms. Valdez changed the work schedule and revoked

Plaintiff's permission to have two days off on the 7th and 8th of January 2019. Neither Defendant nor its agents, including Ms. Valdez, contacted Plaintiff regarding the work schedule or her request for time off because they knew Plaintiff would show up to work if she was instructed.

20. Plaintiff did not know that her previously granted request for time off had been revoked.

21. On January 9, 2019, Plaintiff returned to work and worked her shift from 10:00 p.m. to 6:00 a.m. On January 10, 2019, shortly after completing her shift, Plaintiff was terminated.

22. Plaintiff's termination was done for discriminatory, retaliatory and unlawful purposes. Ms. Valdez retaliated against Plaintiff because of Plaintiff's race and national origin, and because Plaintiff complained of unfair treatment by Ms. Valdez to her superiors.

23. Defendant's mistreatment of Plaintiff included but was not limited to denial of overtime pay, denial of similar breaks and days off to non-African employees, unequal treatment to non-African employees, and intolerance of any form of complaint.

24. Plaintiff experienced discrimination by Defendant and its employees on several previous occasions. In August 2017, Plaintiff requested a day off from work for her birthday, which was something she had done many times before. Ms. Valdez, who was the newly appointed Director of Nursing at the time, denied Plaintiff's request for time off on her birthday.

25. Around the same time Plaintiff's request was denied, Ms. Valdez approved requests for time off on birthdays that were made by similarly situated Hispanic employees, who Ms. Valdez obviously favored over Plaintiff and other African employees. Ms. Valdez is of Hispanic origin. Ms. Valdez denied Plaintiff's request for time off based on Plaintiff's race and national origin.

26. Prior to Ms. Valdez's employment, Plaintiff was permitted to work overtime, and she received compensation accordingly. After Ms. Valdez was hired and began supervising Plaintiff, Plaintiff was never allowed to work overtime or receive compensation for overtime as she previously did.

27. By contrast, Ms. Valdez permitted similarly situated Hispanic employees to work overtime and earn additional income despite refusing Plaintiff and other non-Hispanic employees' requests for overtime hours. This employment decision by Ms. Valdez constitutes a discriminatory deprivation of equal employment opportunities to Plaintiff.

28. In or around October 2018, Plaintiff and other non-Hispanic employees were reprimanded for an alleged incident that occurred with one of the residents' rooms. Plaintiff received a "write-up" for her involvement in the alleged incident. None of the Hispanic employees were written up by Defendant or Ms. Valdez.

29. Shortly after learning that she had been "written up" by Ms. Valdez for this incident, Plaintiff sought a meeting with Defendant's executive director. In this meeting, Plaintiff

expressed that she felt that she was being discriminated against on the basis of race and national origin, and that she felt Ms. Valdez was targeting Plaintiff for no reason other than her race and national origin.

30. After this meeting, Plaintiff was approached by Defendant's agent and Ms. Valdez and was asked to sign the write-up. Plaintiff felt that her employment was being threatened, and felt she had no choice but to comply with her supervisor's and managers' demands. Fearing that if she did not sign the write-up that she would lose her job, Plaintiff reluctantly signed the record of alleged wrongdoing.

31. Three months after this incident, and reporting a hostile and discriminatory work environment, Plaintiff was terminated for the aforementioned alleged failure to report to work for two consecutive days without notifying her supervisor.

32. In actuality, Plaintiff's employment was terminated out of a desire to retaliate against Plaintiff for reporting discriminatory and hostile working conditions.

33. Defendant's Hispanic employees also received preferential treatment in other ways. For example, Defendant financed QMAP training for two Hispanic employees, while Plaintiff was required to obtain her QMAP certification on her own through a private company.

34. Defendant also hired and promoted Hispanic employees with less experience than employees with African heritage, including Plaintiff. Ms. Valdez promoted a fellow

7

Hispanic co-worker to be "team leader" when there were more qualified and more senior African employees willing and able to take that position. The team leader position was supposed to be a rotating position so that a new employee occupied the role at certain intervals. Ms. Valdez maintained one Hispanic employee in the team leader role in spite of this policy.

35. Non-Hispanic employees, including Plaintiff, were regularly required to perform less desirable and more challenging work than their Hispanic counterparts, despite having more experience and seniority. Ms. Valdez, who was responsible for assigning work tasks to employees each day, regularly assigned the more difficult work to non-Hispanic employees and permitted Hispanic employees to take easier work assignments.

36. Defendant, it's agents, and employees showed preferential treatment to Hispanic employees by socializing with Hispanic employees and excluding African employees, including Plaintiff.

37. Defendant, it's agents, and employees showed preferential treatment to Hispanic employees by permitting them to take a breakfast break prior to their shift without clocking out. In contrast, Plaintiff was not permitted to take an analogous break to eat prior to her shift without clocking out.

38. Defendant, through Ms. Valdez and its other agents and employees, condoned and furthered a hostile work environment on the basis of Plaintiff's race and national origin.

39. Defendant and its agents denied Plaintiff equal pay and denied Plaintiff opportunities for promotion while simultaneously granting other non-African employees greater employment opportunities.

40. Defendant was intolerant of Plaintiff's complaints about discriminatory and hostile working conditions and did nothing to address Plaintiff's concerns. Instead, Plaintiff's complaints about discriminatory treatment were met with anger and retaliation.

41. Defendant's employee handbook states that its objective is to recruit, hire, and promote individuals without regard to race, color, religion ,or national origin. Defendant's employee handbook further states that it has zero tolerance for discrimination or retaliation against an employee who reports discrimination.

42. Defendant, through Ms. Valdez and its other agents and employees, violated its own equal employment opportunity policy by discriminating against Plaintiff on the basis of race and national origin, and for retaliating against Plaintiff for reporting discriminatory and hostile working conditions.

43. Defendant's express reason for terminating Plaintiff's employment was her alleged failure to report to work on January 7 and January 8, 2019. This time represents two (2) working days.

44. Defendant points to its employee handbook as adequate grounds for Plaintiff's termination. Defendant's attendance policy states that employees who are absent from work for ***more than two working days*** without notifying the direct supervisor will be terminated.

45. Plaintiff was not absent from work for more than two working days without notifying her direct supervisor. Thus, Plaintiff's employment was terminated in breach of Defendant's own policies and agreement with Plaintiff.

46. Plaintiff notified her supervisor of her intent to be absent from work on January 7 and 8, 2019 when she submitted a written request for time off. Further, Plaintiff contacted Defendant and received confirmation from her co-workers that her request for time off had been approved.

47. Plaintiff's alleged failure to report to work on January 7 and 8, 2019 was not due to her lack of enthusiasm or her halfhearted interest in her work. Quite the opposite, in fact. Plaintiff had previously worked consecutively for over a year. It was only due to the fact that Defendant changed the work schedule and revoked Plaintiff's permission to have two days off without telling her that she did not appear for work on those days.

48. Moreover, Plaintiff showed up to work on-time on January 9, 2019 and worked her entire shift. Thus, even if Plaintiff missed January 7 and 8, 2019 without notifying her supervisor, which Plaintiff specifically denies, this still does not amount to and absence of more than two working days.

49. Therefore, Plaintiff did not violate Defendant's attendance policy, and this alleged failure to report to work without notifying her supervisor cannot be used as grounds for Plaintiff's termination.

50. When Defendant terminated Plaintiff, it did so in violation of the parties' employment contract.

51. As a direct and proximate result of the Defendant's conduct and breach, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

## CLAIMS FOR RELIEF

### I. Employment Discrimination on the Basis of Race and National Origin in Violation of Title VII: Retaliation for Protected Activity

52. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 47 of this Complaint and Jury Demand.

53. Plaintiff, as an African employee of Ethiopian national origin, is a member of a protected class under 42 U.S.C. § 2000e-2(a). Defendant was aware of Plaintiff's protected status.

54. Plaintiff engaged in protected activity by complaining that she was being discriminated against on the basis of race and national origin, and that she felt Ms. Valdez was targeting her for no reason other than her race and national origin.

55. Defendant was aware that Plaintiff's complaints to management about unfair and discriminatory treatment was a protected activity.

56. In response to Plaintiff's protected activity, Defendant took adverse employment actions against Plaintiff.

57. When Plaintiff raised her concerns about the discrimination, Defendant retaliated in the form of actual termination.

58. The adverse employment activity was causally related to the protected activity.

59. Defendant offered transparently pretextual reasons for the adverse employment actions it took on Plaintiff.

60. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

61. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

62. Plaintiff is also entitled to recover reasonable costs and attorney's fees for bringing this action, pursuant to 42 U.S.C. §2000e-5(k).

II.   **Employment Discrimination on the Basis of Race and National Origin in Violation of Title VII: Disparate Treatment**

63. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 57 of this Complaint and Jury Demand.

64. Plaintiff, as an African employee of Ethiopian national origin, is a member of a protected class under 42 U.S.C. § 2000e-2(a). Defendant was aware of Plaintiff's protected status.

65. Defendant discriminated against Plaintiff on the basis of race and national origin in violation of Title VII by engaging in disparate treatment of Plaintiff.

66. Defendant, by and through the conduct of its agents and employees, discriminated against Plaintiff by subjecting her to a hostile work environment due to her race and national origin and by condoning and tolerating a hostile work environment based on Plaintiff's race and national origin.

67. Defendant, by and through the conduct of its agents and employees, further discriminated against Plaintiff by denying Plaintiff the benefits, privileges, promotional opportunities and terms and conditions of her employment due to race and national origin.

68. The hostile work environment based on race and national origin described in preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

69. The hostile work environment to which Plaintiff was subjected was perpetrated by Defendant's employees with direct supervisory authority over Plaintiff.

70. Defendant knew or should have known of the hostile work environment based on race and national origin because Defendant's supervisors and/or managers observed it and had knowledge of it, because the harassment was frequent and notorious in nature and because Plaintiff complained about it to Defendant.

71. Defendant failed to take prompt or effective action to prevent, correct or remedy the hostile work environment based on race and national origin experienced by Plaintiff.

72. Plaintiff was additionally subjected to adverse treatment based on her race and national origin including, but not limited to, denial of continued employment based on her race and national origin.

73. Defendant treated Plaintiff differently than her similarly situated non-African, Hispanic counterparts.

74. The effect of Defendant's unlawful employment practices described above has been to deprive Plaintiff of equal employment opportunities, adversely affect her status as an employee, deprive her of her right to continued employment and deprive her of her right to make and enforce contracts based on her race and national origin.

75. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

76. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

77. Plaintiff is also entitled to recover his reasonable costs and attorney's fees for bringing this action, pursuant to 42 U.S.C. §2000e-5(k).

### III. Employment Discrimination on the Basis of Race and National Origin in Violation of Colo. Rev. Stat. §24-34-401 *et seq.*

78. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 77 of this Complaint and Jury Demand.

79. The actions of Defendant, its agents and employees constituted discriminatory and unfair employment practices. Plaintiff was terminated on the basis of race and national origin, and in retaliation for complaining about discriminatory treatment in the workplace. Plaintiff also suffered disparate treatment discrimination when she was treated differently based on her protected class.

80. Plaintiff was further subjected to disparate treatment during the course of employment based on Plaintiff's race and national origin because she was subjected to a hostile work environment. Plaintiff was further discriminated against in matters of compensation, terms, conditions, or privileges of employment when she was subjected to disparate treatment and deprived of employment opportunities consistent with her non-African co-workers.

81. Defendant's actions were severe and occurred on a daily basis. Plaintiff's continued employment was conditioned upon accepting this outrageous behavior. These actions were sufficiently severe and persistent as to alter the terms, conditions, or privileges of Plaintiff's employment.

82. When Plaintiff complained to her superiors about the discrimination, Defendant retaliated

against Plaintiff in the form of actual termination. Defendant offered transparently pretextual reasons for the adverse employment actions it took against Plaintiff.

83. Plaintiff's assertion of her protected rights was the only motivating factor in the retaliatory actions taken by Defendant.

84. Defendant's response to the discrimination and hostility faced by Plaintiff was entirely inadequate. Defendant negligently or intentionally failed to remedy the discrimination about which it had direct knowledge. Defendant was made aware of the racial hostility and discrimination directly from Plaintiff and Defendant took no remedial action. Defendant ignored the discrimination, and indeed, punished Plaintiff for bringing it to light.

85. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

86. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

87. Plaintiff is also entitled to recover his reasonable costs and attorney's fees for bringing this

action, pursuant to 42 U.S.C. §2000e-5(k).

### IV. <u>Breach of Employment Contract Based on Employer's Violation of Termination Policies and Procedures</u>

88. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 87 of this Complaint and Jury Demand.

89. At all times relevant, Defendant had an employee handbook that was in effect at the time that Plaintiff was terminated by Defendant.

90. The employee handbook set forth policies and/or procedures for terminating Defendant's employees, such as Plaintiff.

91. Defendant demonstrated a willingness to be bound by its termination policies and procedures.

92. Plaintiff was aware of the existence of the employee handbook before she was terminated by Defendant.

93. Plaintiff reasonably understood that Defendant was offering the employee handbook as part of the terms and conditions of Plaintiff's employment, and with that understanding in mind, Plaintiff began and continued her employment with Defendant.

94. Defendant terminated Plaintiff without complying with the termination policies and procedures set forth in the employee handbook.

95. Until she was terminated for unlawful and discriminatory purposes, Plaintiff substantially performed her part of the employment contract.

96. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. All declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages, including but not limited to, unpaid minimum wages, unpaid overtime, unpaid vacation, back pay, font pay, and lost benefits, as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law, in an amount to be determined at trial;

e. Prejudgment and post-judgment interest at the highest lawful rate;

f. Attorneys' fees and costs; and

g. Any further relief the Honorable court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demands a trial by jury of all issues so triable.

Dated this 18th day of December 2020.

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.
*Original signature on file at Baumgartner Law, L.L.C.*


*s/ Sean M. Simeson*
Sean M. Simeson, #
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
sean@baumgartnerlaw.com

<u>Plaintiff's Address</u>:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113